IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

_____

MELINDA D.,

        Plaintiff,

   v.                                    Civil Action No.
                                          5:18-CV-222 (DEP)

NANCY A. BERRYHILL, Acting
Commissioner of Social Security,

        Defendant.

_____

APPEARANCES:                          OF COUNSEL:

FOR PLAINTIFF

OLINSKY LAW GROUP             HOWARD D. OLINSKY, ESQ.
300 S. State Street                    MELISSA A. PALMER, ESQ.
Suite 420
Syracuse, New York 13202

FOR DEFENDANT

HON. GRANT C. JAQUITH          LAUREN E. MYERS, ESQ.
United States Attorney           Special Assistant U.S. Attorney
P.O. Box 7198
100 S. Clinton Street
Syracuse, NY 13261-7198

DAVID E. PEEBLES
CHIEF U.S. MAGISTRATE JUDGE

## ORDER

Currently pending before the court in this action, in which plaintiff

seeks judicial review of an adverse administrative determination by the Acting Commissioner of Social Security, pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), are cross-motions for judgment on the pleadings.[1] Oral argument was heard in connection with those motions on January 3, 2019, during a telephone conference conducted on the record. At the close of argument, I issued a bench decision in which, after applying the requisite deferential review standard, I found that the Acting Commissioner's determination resulted from the application of proper legal principles and is supported by substantial evidence, providing further detail regarding my reasoning and addressing the specific issues raised by the plaintiff in this appeal.

After due deliberation, and based upon the court's oral bench decision, which has been transcribed, is attached to this order, and is incorporated herein by reference, it is hereby

ORDERED, as follows:

1) Defendant's motion for judgment on the pleadings is

---

[1] This matter, which is before me on consent of the parties pursuant to 28 U.S.C. § 636(c), has been treated in accordance with the procedures set forth in General Order No. 18. Under that General Order once issue has been joined, an action such as this is considered procedurally, as if cross-motions for judgment on the pleadings had been filed pursuant to Rule 12(c) of the Federal Rules of Civil Procedure.

GRANTED.

2) The Acting Commissioner's determination that the plaintiff was not disabled at the relevant times, and thus is not entitled to benefits under the Social Security Act, is AFFIRMED.

3) The clerk is respectfully directed to enter judgment, based upon this determination, DISMISSING plaintiff's complaint in its entirety.

_____
David E. Peebles
U.S. Magistrate Judge

Dated: January 3, 2019
Syracuse, NY

```
UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
MELINDA D.,
                                            Plaintiff,

-v-                                         5:18-CV-222

NANCY A. BERRYHILL, Acting Commissioner
of Social Security,

                                            Defendant.
------------------------------------------------------------x
```

**TRANSCRIPT OF PROCEEDINGS**
**BEFORE THE HONORABLE DAVID E. PEEBLES**
January 3, 2019
100 South Clinton Street, Syracuse, New York


For the Plaintiff:
(By telephone)

    OLINSKY LAW GROUP
    300 South State Street
    Suite 420
    Syracuse, New York 13202
    BY: **MELISSA A. PALMER, ESQ.**

For the Defendant:
(By telephone)

    SOCIAL SECURITY ADMINISTRATION
    26 Federal Plaza
    Room 3904
    New York, New York 10278
    BY: **LAUREN E. MYERS, ESQ.**


*Hannah F. Cavanaugh, RPR*
*Official United States Court Reporter*
*100 South Clinton Street*
*Syracuse, New York 13261-7367*
*(315) 234-8545*

```
 1              THE COURT:  I have before me a request for a judicial
 2   review of an adverse determination by the Acting Commissioner
 3   pursuant to 42, United States Code, Sections 405(g) and
 4   1383(c)(3).
 5              The background is as follows:  Plaintiff was born in
 6   August of 1963.  She's currently 55 years old.  She was almost
 7   49 years old at the alleged onset date of her disability and
 8   53 years of age at the time of the hearing in this matter.  She
 9   stands 5'3" inches in height and weighs approximately
10   141 pounds.
11              Plaintiff is divorced.  She has four grown children.
12   She lives in an apartment with a grandson who was 14 years old
13   at the time of the hearing in this matter in Auburn, New York.
14   Plaintiff is left-hand dominant.  She drives.  She has an 11th
15   grade education, although she did subsequently secure a GED at
16   216, although she stated at 1400 that she's a high school
17   graduate.  She attended regular classes while she was in high
18   school.
19              Plaintiff works part-time, approximately 18 hours per
20   week, for New Beginnings, which is a community support system
21   for traumatic brain injury clients, as a personal care aide.
22   Her previous employment has also included working in an adult
23   home, driving Medicaid patients to appointments, working in
24   other settings as a personal care aide, including at Seneca
25   County for the Association of Retarded Children, or ARC.
```

1           Plaintiff suffers from significant physical and
2  mental conditions.  She experiences back pain, degenerative disc
3  disease of the lumbar and cervical spine, scoliosis, migraine
4  headaches, sleep apnea, asthma, a pineal cyst, Sjogren's
5  syndrome, Sicca syndrome, bilateral osteoporosis of the knees --
6  I'm sorry, osteoarthritis, bilateral hip bursitis, and a
7  potential carpal tunnel syndrome issue with respect to the right
8  hand.  She's also been diagnosed at certain points with
9  fibromyalgia, arthritis, and arthralgia.
10          Mentally, plaintiff suffers from anxiety, major
11 depressive disorder, mood disorder.  She has been assigned a
12 Global Assessment of Functioning, or GAF, of between 60 and 65
13 on several occasions during visits to her healthcare providers.
14 The plaintiff secures treatment from a variety of sources,
15 including the Cayuga County Mental Health, Dr. Michael Pratts,
16 Nurse Practitioner Shelyagh Kennedy, and sees LMSW Lauren Walsh
17 approximately every two weeks.
18          The plaintiff's medical history is recounted in some
19 detail unusually so in the Administrative Law Judge's opinion
20 between 18 and 27 of the Administrative Transcript.  Plaintiff
21 has undergone a wide regimen of prescription medications
22 including Trazodone, Effexor, Ativan, Wellbutrin, Hydrocodone,
23 Flexeril, Citalopram, Topamax, Ventolin, Verapamil, Singulair,
24 ProAir, Gabapentin, magnesium, Symbicort, Diclofenac, and
25 Pantoprazole.

In terms of daily living, plaintiff can shower, dress, cook, perform housework, clean, do laundry, shop, watch television. She sleeps during the day and one of her hobbies is monitoring her social media account with Facebook.

Procedurally, plaintiff applied for Title II and Title XVI benefits under the Social Security Act originally in March of 2006 alleging arthritis, back issues, and headaches. The result of that was an Administrative Law Judge decision by Dennis Katz on January 30, 2009, finding that plaintiff was not disabled at the relevant times.

Another application for Title II and Title XVI benefits was filed in August of 2014 alleging an onset date of July 1, 2012. In that application, plaintiff claimed disability based on depression, a mood disorder, anxiety, migraines, asthma, arthritis, and scoliosis of the back. That's at 255 and 269. A hearing was conducted on December 19, 2016, by Administrative Law Judge Gretchen Mary Greisler to address those applications. ALJ Greisler issued a decision on March 6, 2017, unfavorable to the plaintiff. That became a final determination of the agency when the Social Security Administration Appeals Council denied plaintiff's request for review on December 28, 2017.

In her decision, ALJ Greisler applied the familiar five-step test for determining disability. At step one, she concluded that plaintiff had not engaged in substantial gainful

1  activity since July 1, 2012, the alleged onset date, although
2  noting that plaintiff did work on a part-time basis during that
3  period.
4           At step two, she concluded that plaintiff suffered
5  from severe conditions that have at least some significant
6  impact on her ability to perform work-related functions,
7  including migraines, pineal cyst, degenerative disc disease of
8  the cervical spine, degenerative disc disease of the lumbar
9  spine, scoliosis, depressive disorder, mood disorder, anxiety
10 disorder, asthma, Sjogren's syndrome, Sicca syndrome,
11 osteoarthritis of the bilateral knees, trochanteric bursitis of
12 the bilateral hips, fibromyalgia, arthritis, and arthralgia.
13          The Administrative Law Judge went on at step three to
14 conclude that those conditions do not meet or medically equal
15 any of the listed presumptively disabling conditions set forth
16 in the Commissioner's regulations, including considering
17 listings 1.02, 1.04, 3.03, 12.04, 12.06, 14.09, and 14.10.  The
18 Administrative Law Judge went through in some detail the medical
19 treatment that the plaintiff secured in connection with her
20 various conditions.
21          Before proceeding to step four, she surveyed the
22 medical and other evidence in the record and concluded that
23 plaintiff retains the residual functional capacity, or RFC, to
24 perform light work with various limitations that are set forth
25 on page 17 of the Administrative Transcript.  The -- after going

through, again, in some detail plaintiff's treatment history, the Administrative Law Judge concluded at step four that based upon the RFC finding, plaintiff could not perform her past relevant work as a personal care aide and an attendant at a children's institution.

At step five, ALJ Greisler noted that if plaintiff could perform a full range of light work, a finding of no disability would be compelled by the Medical-Vocational Guidelines, or the grids, and particularly grid Rule 202.21 and 202.14. The -- because of the limitations on plaintiff's ability to perform a full range of light work, a vocational expert was called to testify. And based on that testimony, Administrative Law Judge Greisler concluded that plaintiff could perform as an order caller and a cleaner/housekeeper, not withstanding her limitations.

As you know, my task is limited and the Court's review is extremely deferential. I must determine whether correct legal principles were applied and the determination is supported by substantial evidence. With regard to the first point, rejection of Dr. Chi's opinion, clearly as a treating source, ordinarily his opinions would be entitled to controlling weight. However, they can be overcome, including if they are inconsistent with treatment records, if they're inconsistent with other medical evidence in the record, including consultative examinations, although the Second Circuit clearly

1  has cautioned that a treating source's opinion should not be --
2  should be carefully trumped by the opinions of a one-time
3  consultative examiner.
4       When determining whether a treating source opinion
5  should be credited and given controlling weight factors should
6  be considered, including the length of treatment relationship,
7  frequency of examination, nature and extent of treatment
8  relationship, the evidence supporting the treatment provider's
9  opinion, the degree of consistency between the opinion and the
10 record as a whole, whether the opinion is given by a specialist,
11 and other evidence brought to the attention of the ALJ.
12      In this case, Dr. Chi's opinions are extremely
13 restrictive and I agree that they are not fully supported by the
14 record as a whole.  They are including Dr. Lorensen's
15 consultative exam and various treatment records including of Dr.
16 Chi.  Dr. Chi, of course, is a -- is not a specialist, he's a
17 primary care provider.  The -- it is -- when there is
18 conflicting medical opinions in the record, it is the function
19 of the ALJ to weigh those and determine what parts of each
20 should be accepted.  The opinion of Dr. Lorensen was accepted,
21 with the exception of the reaching limitation, and there was an
22 explanation given.  There simply wasn't any empirical objective
23 evidence suggesting that plaintiff had a limitation on reaching.
24 In fact, at page 590 of the Administrative Transcript, in her
25 function report she indicated that she did not have any

1  difficulty in reaching.

2  In terms of stress, clearly Dr. Noia indicated a
3  moderate to marked limitation on stress.  Dr. Harding, however,
4  who reviewed the record, did not find a limitation to that
5  extent.  In any event, the RFC did take into account a
6  limitation on work-related stress and specifically concluded
7  that plaintiff can handle reasonable levels of simple
8  work-related stress and went on to explain the meaning of that.

9  The rejection of absenteeism was explained as
10 speculative.  And although I credit plaintiff's counsel for a
11 creative argument concerning the number of appointments, I don't
12 minimize that plaintiff clearly would be absent on occasion for
13 treatment from her medical providers, I think it is a leap to
14 say that she would be absent for two full days a month to attend
15 appointments.

16 And the last issue that I had concern with was the
17 potential conflict between the DOT order caller description and
18 the requirement potentially of tandem work and the RFC, which
19 appears to limit joint efforts with co-workers.  It is true, as
20 defendant's counsel argued, that the -- that there could be some
21 interaction with co-workers consistent with the RFC and -- but
22 if there was -- if there is a perceived conflict, then SSR 00-4p
23 would require the vocational expert to explain and reconcile the
24 conflict, and that is consistent with this Court's decision in
25 *Bevens v. Colvin*, 2015 WL 5750083, and *Carbee v. Commissioner* at

1  2018 WL 333516, both from this district.
2             However, even assuming for the sake of argument that
3  there was a conflict that should have been reconciled pursuant
4  to that Social Security ruling in those cases, the error is
5  harmless because there was also the position of housekeeper,
6  which the vocational expert stated, based on her RFC, plaintiff
7  is capable of performing and, therefore, because there are
8  sufficient numbers of housekeeping positions in the national
9  economy, the Commissioner carried her burden at step five of the
10 sequential test.
11            So I do not find that the determination was the
12 result of an application of incorrect legal principles and/or is
13 not supported by substantial evidence, so I will grant judgment
14 on the pleadings to the defendant and dismiss plaintiff's
15 complaint.
16            Thank you both for excellent presentations.
17            MR. PALMER:  Thank you, your Honor.
18            MS. MYERS:  Thank you, your Honor.
19            (Time noted:  10:49 a.m.)

```
 1
 2              CERTIFICATE OF OFFICIAL REPORTER
 3
 4
 5         I, HANNAH F. CAVANAUGH, RPR, Official Court
 6   Reporter, in and for the United States District Court for the
 7   Northern District of New York, DO HEREBY CERTIFY that pursuant
 8   to Section 753, Title 28, United States Code, that the foregoing
 9   is a true and correct transcript of the stenographically
10   reported proceedings held in the above-entitled matter and that
11   the transcript page format is in conformance with the
12   regulations of the Judicial Conference of the United States.
13
14              Dated this 3rd day of January, 2019.
15
16                      x  Hannah F. Cavanaugh
17                         HANNAH F. CAVANAUGH, RPR
18                         Official U.S. Court Reporter
19
20
21
22
23
24
25
```